RAPID SETTLEMENTS,
LTD., Appellant,

v.

Jerry GREEN, Transamerica Occidental
Life Insurance Company, and Trans-
america Annuity Service Corporation,
Appellees.

No. 01–08–00109–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 18, 2009.

Panel consists of Justices JENNINGS, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Appellant, Rapid Settlements, Ltd. (Rapid), appeals the trial court's grant of summary judgment in favor of appellees, Jerry Green (Green), Transamerica Occidental Life Insurance Company, and Transamerica Annuity Service Corporation (collectively, Transamerica), thereby vacating an arbitrator's award in favor of Rapid. In three issues, Rapid asserts the trial court erred by failing to confirm the arbitrator's award, finding the arbitrator's award constituted a transfer under the Structured Settlement Protection Act (SSPA), and awarding Transamerica attorney's fees. Because the arbitrator's award does constitute a transfer under the SSPA, making the SSPA applicable to this case, we conclude the trial court did not err by vacating the arbitrator's award and awarding Transamerica its attorney's fees. We affirm.

### Background

In 1988, Green, a Florida resident, settled his personal injury suit. The settlement entitled Green to a series of monthly structured settlement payments. Transamerica was the annuity issuer and obligor for these payments.

Rapid entered into a Transfer Agreement with Green in 2006. Under the terms of the Transfer Agreement, Rapid agreed to pay Green a lump sum of $13,000. Green agreed to transfer to Rapid 180 of his future structured settlement payments of $485 each. The Transfer Agreement stated that the transfer was subject to court approval. It also contained a number of representations and warranties, including a representation

Harry J. Fleming, John R. Craddock, Monica Cavazos–Rosas, Stewart A. Feldman, Susan Hatcher Knight, The Feldman Law Firm LLP, Houston, TX, for Appellant.

David L. Pybus, Hilary A. Frisbie, Preis & Roy, Houston, TX, Jerry M. Green, St. Petersburg, FL, for Appellee.

from Green that the payments to be assigned were unencumbered. The Transfer Agreement specified that disputes arising under the Transfer Agreement were to be resolved through binding arbitration.

Through its own research, Rapid discovered that Green had already conveyed a number of payments that Green proposed to transfer to Rapid, and those payments were subject to a 2005 order of garnishment entered by a Philadelphia court. Alleging Green misrepresented his rights in the contract, Rapid filed a demand for arbitration. Though Transamerica received notice of the arbitration, Transamerica was not named as a party. Because Transamerica had not signed an agreement to arbitrate, Transamerica declined to participate in the proceedings.

The arbitrator issued an "agreed award," which stated in part:

> Green breached the foregoing agreement with Rapid. The parties herein have agreed to settle their dispute upon the following terms and conditions with Green having two alternatives over the next two weeks:
>
> Alternative I: Green shall pay to Rapid the amount of $10,000 cash on or before May 1, 2007. After such date, this option on Green's part shall no longer be available to him; or at Green's choice; or
>
> Alternative II: (i) Rapid shall pay to a third party the amount of $9,700.00 on Green's behalf to clear title to the Garnished Payments (as defined below); (ii) Green shall pay to Rapid the amount of $35,146.00 ("Damages"); and (iii) Rapid shall pay to Green the amount of $9000 in cash, reduced if necessary by additional monies due to clear title to Green's payments. The net amount of $26,146.00 due to Rapid shall be paid to Rapid with the following payments otherwise due to Green under the Annuity

> Contract No. 882576, which are hereby garnished and transferred to Rapid's assignee, which constitutes the financial equivalent (time value adjusted) of the Damages:
>
> Two Hundred Seventy–Five (275) guaranteed and not life contingent monthly payments each in the amount of $485.00 beginning on July 28, 2008 through and including May 28, 2031 (hereinafter the "Garnished Payments")....
>
> . . . .
>
> It is further
>
> . . . .
>
> ORDERED that the Annuity Owner and Annuity Issuer shall change the designated beneficiary under the annuity for the Garnished Payments to RSL Special–IV, Ltd. and no person or entity other than Rapid or Assignee shall have the authority, upon written notification to the Annuity Owner and Annuity Issuer, to change the beneficiary for the Garnished Payments.

Rapid filed a petition to confirm the arbitrator's award.

In response to the motion to confirm, Transamerica filed a petition in intervention, opposing confirmation of the arbitrator's award, and requested that the court vacate the award. Transamerica subsequently filed a motion for summary judgment on its application to vacate the award, requesting attorney's fees. The trial court granted Transamerica's motion, vacating the arbitrator's award. Rapid filed a motion for new trial or for clarification, which the trial court denied. Transamerica's claim for attorney's fees proceeded to a bench trial, and the trial court awarded Transamerica $30,000 in attorney's fees.

## SSPA

■ Tort claimants with structured settlement agreements sometimes sell their future payment rights to companies in exchange for a present lump sum. *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.,* 599 F.Supp.2d 809, 814 (S.D.Tex.2008). Texas, as well as 42 other states, enacted the SSPA to protect unwary tort claimants from potential abuse in their transactions with these companies. *Id.* at 814–15. In order to accomplish this, the SSPA requires a court to approve a proposed transfer agreement before a transfer of structured settlement rights to a factoring company occurs. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 141.004 (Vernon 2005). The court must expressly find that the transfer is in the payee's best interest, the payee has been advised in writing to seek independent professional advice, and the transfer does not conflict with any applicable statute or court order. *See id.*

## Applicability of FAA

Because the parties disagree, we must address whether the Federal Arbitration Act (FAA) or the Texas Arbitration Act (TAA) applies to this arbitration agreement. *See* 9 U.S.C.S. §§ 1–307 (LexisNexis 2008); TEX. CIV. PRAC. & REM.CODE ANN. § 171.001–.098 (Vernon 2005).

■ The FAA applies to all suits in state or federal court when the dispute concerns a "contract evidencing a transaction involving commerce." *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992) (orig. proceeding). When there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing that the transaction affects or involves interstate commerce. *See Stewart Title Guar. Co. v. Mack,* 945 S.W.2d 330, 333 (Tex.App.-Houston [1st Dist.] 1997, writ dism'd w.o.j.). Under the FAA, "interstate com-

merce" is not limited to the interstate shipment of goods, but includes all contracts "relating to" interstate commerce. *In re FirstMerit Bank,* 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). Interstate commerce may be shown in several ways, including: (1) location of headquarters in another state; (2) transportation of materials across state lines; (3) manufacture of parts in a different state; (4) billings prepared out of state; and (5) interstate mail and phone calls in support of a contract. *See Tipps,* 842 S.W.2d at 270; *Mack,* 945 S.W.2d at 333.

■ In this case, the arbitration agreement does not expressly state whether the FAA or TAA applies. However, the record establishes that the proposed transaction between Green and Rapid Settlements involved interstate commerce: Green is a Florida resident who contracted with Rapid Settlements, a Texas corporation. *See In re People's Choice Home Loan, Inc.,* 225 S.W.3d 35, 40–41 (Tex.App.-El Paso 2005, no pet.). We hold the FAA applies because the contract involves interstate commerce.

## Preemption

In its second issue, Rapid Settlements asserts the FAA preempts the SSPA.

■ "[S]tate law is naturally preempted to the extent of any conflict with a federal statute." *Crosby v. Nat. Foreign Trade Coun.,* 530 U.S. 363, 372, 120 S.Ct. 2288, 2294, 147 L.Ed.2d 352 (2000). Rapid Settlements cites *Preston v. Ferrer,* 552 U.S. 346, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008), *Circuit City Stores Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and *In re David's Supermarkets, Inc.,* 43 S.W.3d 94 (Tex. App.-Waco 2001, no pet.), contending that

these cases "put to rest" "the question of conflict or violation of an arbitration decision with state law." However, these cases concern state laws that expressly or directly interfere with a party's voluntary decision to arbitrate under the FAA. In contrast, the SSPA in no way prohibits or limits arbitration between parties. *See Symetra*, 599 F.Supp.2d at 827–28; *Symetra Nat. Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 14–07–00880–CV, 2009 WL 1057339, at *4–5 (Tex.App.-Houston [14th Dist.] Apr. 21, 2009, no pet. h.) (mem. op.); *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 234 S.W.3d 788, 797 (Tex. App.-Tyler 2007, no pet.); *In re Rapid Settlements*, 202 S.W.3d 456, 460 (Tex. App.-Beaumont 2006, pet. denied). "Nothing in the [SSPA] prohibits parties from including an arbitration provision in the transfer agreement.... Section 141.004 of the SSPA requires prior court approval of the transfer agreement, not the arbitration clause, and is therefore not pre-empted by the FAA." *Rapid Settlements*, 202 S.W.3d at 460 (citing Tex. Civ. Prac. & Rem.Code Ann. § 141.004.) We hold the FAA does not preempt the SSPA.

### No Agreement to Arbitrate

In its first issue, Rapid asserts the trial court erred in vacating the arbitrator's award because Transamerica did not establish one of the exclusive grounds to vacate an arbitrator's award under the FAA. *See* 9 U.S.C.S. § 10. Transamerica responds that the arbitrator exceeded his authority by purporting to bind Transamerica. Transamerica explains that it never agreed to arbitrate its disputes with Rapid and therefore cannot be bound by the arbitrator's order.

■ The court of appeals reviews de novo a trial court's decision to confirm or vacate an arbitration award under the FAA. *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex.App.-Dallas 2007, no pet.). A district court may vacate an award under the FAA only if (1) the award was procured by fraud, corruption, or undue means; (2) there was evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct that prejudiced the rights of a party; or (4) the arbitrators exceeded their powers. 9 U.S.C.S. § 10(a). Transamerica invokes the fourth ground for vacatur, asserting the arbitrator had no authority to bind Transamerica because the arbitrator lacked jurisdiction over Transamerica.

■ "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002). "[A] duty to arbitrate can arise only by agreement." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 535 (7th Cir.2008) (citing *United Steelworkers of Am. v. Warrior & Gulf*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)).

■ "[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002); *see also AT & T Techs., Inc. v. Communc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *TriMas Corp.*, 531 F.3d at 535; *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir.2003) (holding that "where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute"). Under the FAA, state law governs the question of whether a litigant has agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45, 115

S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130–31 (Tex.2005).

■■■■■ It is undisputed that Transamerica did not agree to arbitrate with Rapid and Green. We must therefore consider whether Transamerica might be bound as a nonsignatory. According to principles of contract and agency law, arbitration agreements may bind nonsignatories under any of six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third party beneficiary. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex.2005). Transamerica does not fall into any of those six categories, and Rapid does not contend it does. We therefore conclude Transamerica was not bound to arbitrate.

Rapid implies that whether Transamerica agreed to arbitrate is irrelevant because Transamerica has no cognizable interest in the arbitration. However, the SSPA itself defines Transamerica as an "interested party." *See Transamerica Occidental Life Ins. Co. v. Rapid Settlements Ltd.*, 284 S.W.3d 385, 392 (Tex.App.-Houston [1st Dist.] 2008, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM.CODE ANN. §§ 141.002(7), .006). Two additional considerations support Transamerica's status as an interested party:

> First, the SSPA provides that no structured settlement obligor or annuity issuer … can be required … to make any payment to any transferee absent court approval of the transfer. This provision gives [the obligor] an interest sufficient to contest any attempt to force it to make payments, in the absence of court approval, to anyone other than the original payee. Second, if [the obligor] were to make payments to the wrong payee, it could become subject to double liability. This potential liability gives

> [the obligor] a justiciable interest in any attempt to transfer the right to receive structured payments absent court approval.

*Transamerica*, 284 S.W.3d at 392 (internal citations omitted). Because the SSPA acknowledges Transamerica as an interested party, and because the arbitrator's award could potentially subject Transamerica to double liability, Transamerica does have an interest in the outcome of the arbitration proceedings.

■■■■ Transamerica was not bound to arbitrate, yet the arbitrator's award purports to bind Transamerica by ordering it to redirect structured settlement payments. We conclude the arbitrator exceeded his authority in issuing the award. *See* 9 U.S.C.S. § 10(a)(4). We hold the trial court did not err by vacating the arbitrator's award because the arbitrator exceeded his powers in issuing an award against a party not subject to arbitration. *See id.* § 10. We overrule Rapid's first issue.

### Meaning of "Transfer" Under SSPA

■■■■ In its second issue, Rapid asserts the arbitrator's award is not a "transfer" under the SSPA. Rapid instead characterizes the garnishment of Green's structured settlement payments as damages for breach of contract, which does not require court approval under the SSPA.

The SSPA defines "transfer" as "any sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights made by a payee for consideration." TEX. CIV. PRAC. & REM.CODE ANN. § 141.002(18). Based on this definition, Rapid asserts that a transfer must be voluntary, whereas the transfer of structured settlement payments in this case was involuntary because the arbitrator awarded the payments as damages.

However, Green did voluntarily agree to sell his structured settlement payments for consideration. By signing the arbitrator's award, Green agreed to garnishment of 275 structured settlement payments in exchange for $9000 in cash. *See Symetra,* 2009 WL 1057339, at *4 (citing *Harris v. Balderas,* 27 S.W.3d 71, 80 (Tex.App.-San Antonio 2000, pet. denied) (holding consideration is fundamental element of settlement agreement)). "The fact that Rapid has obtained such a transfer by an arbitration award purporting to award 'lost profits' or 'damages' for a breach of the agreement does not change the fact that it is a transfer under the [SSPA]." *Symetra,* 599 F.Supp.2d at 830; *see also Symetra,* 2009 WL 1057339, at *4; *Rapid Settlements,* 234 S.W.3d at 800–01.

We hold the arbitrator's award did constitute a transfer under the SSPA. We overrule Rapid's second issue.

### Attorney's Fees

In its third issue, Rapid contends the trial court erred by awarding attorney's fees to Transamerica pursuant to section 141.005 of the SSPA.

Section 141.005 of the SSPA states:

Following a transfer of structured settlement payment rights under this chapter:

. . . .

  (2) the transferee shall be liable to the structured settlement obligor and the annuity issuer:

  . . . .

  (B) for any other liabilities or costs, including reasonable costs and attorney's fees, . . . arising as a consequence of the transferee's failure to comply with this chapter. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 141.005. Rapid asserts Transamerica cannot recover attorney's fees under this section be-

cause there has not been a "transfer of structured settlement payment rights." *See id.* We have already held that the arbitrator's award did constitute a transfer under the SSPA. We therefore hold the trial court did not err by awarding Transamerica its attorney's fees. We overrule Rapid's third issue.

### Conclusion

We affirm the judgment of the trial court.